## DEWEY v. WHITNEY et al.

### (Circuit Court, N. D. New York. February 21, 1898.)

SPECIFIC PERFORMANCE—CONTRACT TO CONVEY.

A. and B., sisters-in-law, together purchased a parcel of land; A. taking title to the whole, with the understanding that B. should have an acre and a third set off to her on the western side. Each also paid for half of a strip, 30 feet wide, leading to the highway and lake. A. thereafter contracted to sell to a third party, who knew of B.'s right to the 1⅓ acres, her entire interest in the property. Disputes subsequently arose, and at length the purchaser sued both A. and B. for specific performance. *Held*, that a decree would be granted; the court first setting off, in its best judgment, according to the evidence, the part intended to be reserved to B., and also giving B. a right of way over complainant's land to the highway.

This was a suit in equity by Melvil Dewey against Maria Whitney and Elizabeth W. Whitney to compel conveyance of title to certain parcels of land.

Richard L. Hand, for complainant.
Edward B. Whitney, for defendants.

COXE, District Judge. In October, 1893, the defendant, Miss Maria Whitney, held the record title to the premises described in

the bill, consisting of a summer cottage and boat house on Mirror Lake in the town of North Elba, Essex county, N. Y. This property is divided into six parcels. One of these, known as "Lot No. 1," was purchased in 1883 for $450, the defendant Maria Whitney paying $250 and her sister-in-law, the defendant Mrs. Elizabeth W. Whitney, paying $200, with the understanding that she was to have an acre and a third of said lot set off for her use. Mrs. Whitney also paid for half of a small strip of land, 30 feet wide, leading from lot No. 1 to the highway and the lake, her share being $15. The title to the entire property was taken in the name of Miss Whitney, and after the joint purchase she had entire charge of the property, paying the taxes, and leasing it when not occupying it herself. It was known as Miss Whitney's property. Her sister-in-law had never exercised any dominion over it, and had been absent for so long a time that as Miss Whitney says in one of her letters, "I almost forgot myself that she had any rights there." In the autumn of 1893 Miss Whitney, for reasons personal to herself, became anxious to sell all her property at North Elba, and offered it to the complainant. He having declined to pay the price asked, she urged him to make an offer. After a careful examination of the premises he made an offer of $3,500 on Friday, October 6, 1893, which was accepted in writing the same day. The details were not settled until the 20th, when the minds of the parties met, and the preliminary payment of $350 was paid.

We start, then, with the proposition, which is established beyond the peradventure of a doubt, if, indeed, it is not expressly conceded, that on the 20th of October, 1893, the defendant, Miss Whitney, agreed to sell all her right, title and interest in the North Elba estate for $3,500, 10 per cent. to be paid in cash and the balance in 10 years, with interest at the rate of 6 per cent. per annum. It is true that, as is ordinarily the case, all the trivial details were not arranged at that time, but it is unnecessary to discuss these as there can be no doubt whatever that Mr. Dewey bought and Miss Whitney sold the property in question. Upon what theory she can be relieved of this positive agreement the court is unable to perceive. Miss Whitney was to receive $3,500 for her interest in the property. At the time of the negotiations there was no dispute as to what that interest was. Both parties understood that she owned the entire property subject to the right of her sister-in-law to have a 1⅓-acre piece located in the western half of lot No. 1. Had the sale been for cash, and had the complainant paid or tendered the entire amount, can there be a doubt that he could have compelled such a quitclaim deed reserving the right of ingress and egress over lot No. 2 to the public highway? On the other hand, had such a deed been tendered, it is thought that the complainant would have been compelled to accept it. No such deed was tendered, nor has any deed been tendered giving the complainant what both parties supposed he purchased when the bargain was originally made. The claim to lot No. 2 was an afterthought, Miss Whitney conceding that she had not thought of the $15 interest of her sister-in-law in the "lane and boat-house site" until afterwards. The complainant had a right to assume

when the boat house was alluded to in the negotiations that it included the lot on which it stood, and that he was not to be limited to the land directly beneath the structure which then stood there. That Miss Whitney so understood the agreement is evident from her correspondence. On November 7th she wrote to Mr. Kennedy, requesting him to sell her a boat-house site, to be given to Mrs. Whitney in exchange for "the one that belonged to my place, and which is included in the land to be deeded to Mr. Dewey." She also thought of purchasing from Miss Este. As late as November 28th she wrote to the complainant that she had suggested to the conveyancer "that he should draw your deed as if I sold you all the land, except the above-mentioned $1\frac{1}{3}$ acres." If this had been done the controversy would have terminated, so far as the complainant and the defendant Maria Whitney are concerned. To change the agreement from the one actually made to an agreement which might have been made, or to one which the defendants are convinced ought to have been made, would, it is thought, be inequitable and unjust, in view of the fact that the complainant went immediately into possession, has made other large purchases in the vicinity and has spent a considerable sum in improving the property in question. Mrs. Whitney should be reimbursed for her loss, but this should be done by her sister-in-law, who made the mistake, and not by the complainant, who is free from carelessness and fault.

If, then, the controversy ended here, it would be one of easy solution, but the presence of Mrs. Whitney as a defendant makes it necessary to determine her interest, Miss Whitney having deeded to Mrs. Whitney the latter's interest in the estate as she conceived it to exist. When Mrs. Whitney's lot of one and a third acres is located, there can be no obstacle to a decree for specific performance. In determining this question it should be remembered that the complainant had full and timely notice of Mrs. Whitney's interest, and that he was not justified in relying wholly upon the representations of others. If he wanted definite information regarding Mrs. Whitney's claim, he should have applied directly to her. It is entirely clear that neither party to the contract knew at the time it was entered into precisely where Mrs. Whitney's piece was situated. The descriptions were all general, vague and uncertain. It certainly was not settled at the time of the original purchase from Brewster, neither was it settled by agreement between the defendants prior to the sale to the complainant. If, then, the location was not agreed upon between Mrs. Whitney and the complainant, the court must locate it with reference to all the testimony, and upon such principles as are equitable, taking the entire situation into consideration.

On the 20th of November, 1893, the complainant wrote Mrs. Whitney as follows:

"Have you a deed of which you send me a copy of the description of your acre and a third? * * * If you will send the exact wording of whatever writing you have on the matter I will have stakes driven," etc.

In reply, on December 9th, Mrs. Whitney wrote very fully, giving a history of her purchase, and her understanding of where her land was situated, and concluded by saying:

"I shall leave the marking entirely to you of the upper boundary. The other three lines lie, of course, between your roadway, Miss Este's acre, and the Billings line."

In other words, she proposed that her land should be bounded on the south by the complainant's roadway, on the west by the Este property, on the north by the Billings property and on the east by a line substantially parallel to the Este line, to be drawn between the Billings line and the roadway at such a point as would give her an acre and a third, less a small piece at the southwestern corner which was to serve as an outlet to the highway. That the complainant understood that this was the proper location is sufficiently clear by his letter to Miss Whitney of November 29th, in which he says:

"Mrs. Whitney simply takes an acre and a third of the land nearest the lake, and we draw the line parallel to Miss Este's line, and set the stakes where it will give her just an acre and a third, bounded by my 30-foot lane. Miss Este Frazier's and by my land on the east."

Thus it may be said that the minds of the parties met when all were endeavoring to arrive at a fair settlement, and before the situation was obscured by the disputes and misunderstandings which subsequently arose. Furthermore it is thought that this is the location which the court would have selected if compelled to fix the boundaries had the dispute arisen between the defendants before the sale to the complainant. It would be inequitable to reduce Mrs. Whitney's lot by a strip 30 feet wide running its entire length. She would then have not an acre and a third, but an acre and a third minus a strip 30 feet wide. Thus construed the contract is perfectly intelligible and capable of execution. The complainant purchased all the land to which Miss Whitney held title, less Mrs. Whitney's acre and a third, which is located as before stated, with the right of way to the public road which the law gives, and which the complainant concedes. Any competent surveyor could, and can, run the eastern line with perfect accuracy. When a feeling of mutual distrust arose, claims were advanced on both sides, which, in view of the conclusion reached by the court, it is unnecessary to discuss.

It is most unfortunate that a controversy of this character should have arisen between people of refinement and intelligence, who once entertained for each other sentiments of friendship and esteem. The court has withheld the decision until now with the hope that the suggestions made at the argument might be adopted. Ordinarily the business of the court is to decide causes, not to settle them, but the circumstances here are so exceptional and the amount actually involved so small that the endeavor to terminate a painful and expensive litigation by an adjustment honorable to all seemed justifiable if not commendable. It follows that there should be a decree directing the defendant Maria Whitney to deliver to the complainant a quitclaim deed of the land in question less the acre and a third bounded as indicated, the defendant Elizabeth W. Whitney to have a perpetual right of way over the complainant's land to the highway, to be reserved in the deed. The decree should further provide that upon the execution of the deed the complainant shall ex-

ecute and deliver to the defendant Maria Whitney a mortgage for the unpaid purchase price, payable in 10 years from October 8, 1893, with interest at the rate of 6 per cent. per annum payable annually.